IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 04-21351 CIV-GRAHAM
MAGISTRATE JUDGE GARBER

MARY ANN COLLIER, ARTHUR L.
WALLACE, ROY MCGOLDRICK,
and ROBERT PINO,

Plaintiffs,

vs.

FRED O. DICKINSON III, CARL A. FORD,
and SANDRA LAMBERT,

Defendants.

_____/

SECOND AMENDED CLASS
ACTION COMPLAINT

JURY TRIAL DEMAND

FILED by

APR 2 2 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

D.C.

Plaintiffs, MARY ANN COLLIER, ARTHUR L. WALLACE, ROY MCGOLDRICK,

and ROBERT PINO, individually ("**Plaintiffs**"), and on behalf of all others similarly situated

(the "**Class Members**"), through their undersigned attorneys, sue Defendants, FRED O.

DICKINSON III ("**Dickinson**"), CARL A. FORD ("**Ford**"), and SANDRA LAMBERT

("**Lambert**"), and allege as follows:

## JURISDICTION AND VENUE

1.      Plaintiffs, on behalf of themselves and the Class Members, bring this lawsuit

against the Defendants in their personal capacity pursuant to 42 U.S.C. § 1983 *et seq.* and

18 U.S.C. § 2724, for monetary damages as a proximate result of Defendants' violations of the

rights, privileges, and immunities secured to Plaintiffs and the Class Members by the

Constitution and laws of the United States.

2.      This Court has jurisdiction pursuant to 18 U.S.C § 1331.

3.      Venue is proper because a substantial part of the events or omissions giving rise

to the claims set forth herein occurred in this District.

EXHIBIT __A__

Collier, et al. v. Dickinson, III, et al.
District Court Case No. 04-21351-CIV-Graham
Magistrate Judge Garber

## PARTIES

4.     Plaintiffs reside in the Southern District of Florida.  At all times material to this action, Plaintiffs owned one or more motor vehicles registered with the State of Florida Department of Highway Safety and Motor Vehicles ("**DHSMV**"), and have held Florida driver licenses issued by DHSMV.  To obtain their driver licenses and register their motor vehicles with DHSMV, Plaintiffs were required to, and did, provide DHSMV with certain "personal information," as defined in Fla. Stat. § 119.07(3)(aa) and 18 U.S.C. § 2725.  DHSMV collected Plaintiffs' personal information through branch offices maintained by DHSMV in the Southern District of Florida.   Thereafter, DHSMV entered Plaintiffs' personal information into the computer database of motor vehicle records maintained and administered by DHSMV, consisting of records pertaining to motor vehicle operators' permits, motor vehicle titles, motor vehicle registrations, and identification cards.   DHSMV's motor vehicle records contain personal information of all licensed drivers and registered motor vehicle owners in the State of Florida.

5.     Defendant DICKINSON is a resident of Leon County and the Executive Director of DHSMV.  Plaintiffs seek judgment against DICKINSON for monetary damages in his personal and individual capacity for acts and practices taken under color of state law, which have subjected Plaintiffs and the Class Members to deprivation of their rights, privileges, and immunities secured by the United States Constitution and laws of the United States, specifically, their right of privacy as secured to them under the Drivers' Privacy Protection Act, 18 U.S.C. § 2721, et. seq. (the "DPPA") and the 5th and 14th Amendments of the United States Constitution.

6.     Defendant FORD is a resident of Leon County, Florida and the Director of the DIVISION OF MOTOR VEHICLES ("**DMV**") of the DHSMV.  Plaintiffs seek judgment against FORD for monetary damages in his personal and individual capacity for acts and

- 2 -

practices taken under color of state law, which have subjected Plaintiffs and the Class Members to deprivation of their rights, privileges, and immunities secured by the United States Constitution and laws of the United States, specifically, their right of privacy as secured to them under the DPPA and the 5th and 14th Amendments of the United States Constitution.

7.      Defendant LAMBERT is a resident of Leon County, Florida and the Director of the DIVISION OF DRIVER LICENSES ("**DDL**") of the DHSMV.  Plaintiffs seek judgment against LAMBERT for monetary damages in her personal and individual capacity for acts and practices taken under color of state law, which have subjected Plaintiffs and the Class Members to deprivation of their rights, privileges, and immunities secured by the United States Constitution and laws of the United States, specifically, their right of privacy as secured to them under the DPPA and the 5th and 14th Amendments of the United States Constitution.

8.      Defendants DICKINSON, FORD, and LAMBERT are hereafter collectively referred to as "Defendants."

### FACTS

9.      In 1994, to protect drivers' and motor vehicle owners' privacy, Congress enacted the DPPA, 18 U.S.C. § 2721—2725, prohibiting state departments of motor vehicles from disclosing motor vehicle owners' and drivers' personal information, including, but not limited to, their names, addresses, and social security numbers, except under certain limited circumstances. The United States Supreme Court upheld the constitutionality of the DPPA in *Reno v. Condon*, 528 U.S. 141 (2000).  Before June 1, 2000, the DPPA permitted states to imply consent of driver license holders and motor vehicle owners for the release of their personal information for marketing purposes if they were provided the opportunity to "opt out" of any plan or program whereby state departments of motor vehicles were disclosing the information for such purposes.

- 3 -

Collier, et al. v. Dickinson, III, et al.
District Court Case No. 04-21351-CIV-Graham
Magistrate Judge Garber

10.     On October 9, 1999, Congress amended the DPPA by enacting Pub. L. 106-69, Sec. 350(c) and (d) (the "Shelby Amendment"), eliminating the implied consent scheme. Effective June 1, 2000, the DPPA, as amended, prohibited any officer or employee of any state department of motor vehicles from knowingly disclosing or otherwise making available to any person or entity, personal information taken from motor vehicle records, for bulk distribution for surveys, marketing or solicitations, or for any other use in response to requests for individual motor vehicle records **unless the state obtained the express consent of the person to whom the personal information pertained**.

11.     During the period commencing June 1, 2000, and continuing to the present, Defendants, acting under color of state law, knowingly authorized, directed, ratified, approved, acquiesced in, committed or participated in, acts and practices in direct violation of the DPPA, whereby DHSMV employees knowingly and repeatedly—without Plaintiffs' and the Class Members' express consent—took personal information pertaining to Plaintiffs and the Class Members maintained by DHSMV in motor vehicle records and compiled and reformatted it into customized mailing lists which were then sold to various third parties for bulk distribution for surveys, marketing or solicitations, or otherwise provided to third parties for purposes not permitted by the DPPA.

12.     At all times material to this action, the Defendants actually knew, or reasonably should have known, that their actions violated clearly established statutory and constitutional rights of the Plaintiffs and the Class Members. The specific, relevant facts that show that the Defendants actually knew that their conduct violated clearly established federal law or, alternatively, that no reasonable person in the Defendants' position could have concluded that their conduct was not unlawful are as follows:

- 4 -

Collier, et al. v. Dickinson, III, et al.
District Court Case No. 04-21351-CIV-Graham
Magistrate Judge Garber

A.   **Defendant, FRED DICKINSON**:

(i)     Defendant, DICKINSON, was appointed by the Governor and Cabinet as Executive Director of the DHSMV in 1992 and has served in that capacity continuously up to the present date;

(ii)    Defendant, DICKINSON, is a 1980 graduate of the Florida State University Law School and is currently a member in good standing of The Florida Bar;

(iii)   As Executive Director, Defendant, DICKINSON, is ultimately in charge of all personal information contained in the driver's license and motor vehicle registration records of approximately 15 Million Florida residents;

(iv)    Defendant, DICKINSON's duties include overseeing all of the Department's operations, departmental policy making, budgetary matters, and ensuring the Department's compliance with applicable laws and regulations.  He is a registered lobbyist and represents DHSMV in departmental matters that come before the Florida Legislature;

(v)     At all times material to this cause of action, Defendant, DICKINSON's legal staff, including General Counsel, and approximately six full time lawyers, were located in Defendant DICKINSON'S office in Tallahassee, Florida, and were available to provide advice and counsel to the Defendant, DICKINSON, and his executive staff, including Defendants, FORD and LAMBERT;

(vi)    In 1997, the Defendant, DICKINSON, successfully lobbied the Florida Legislature to amend Florida's public records law (§ 119.07, Florida Statutes) to allow DHSMV to release personal information from motor vehicle records for bulk distribution for surveys, marketing or solicitations, in a manner which would not violate

- 5 -

the DPPA.   Thus, § 119.07, Florida Statutes was amended to permit the release of such information for such purposes only if the individuals to whom such information pertained were provided an opportunity, in a clear and conspicuous manner, to prohibit such use. This procedure, known as the "opt-out" system to protect personal privacy, was required under the DPPA, which, until it was amended by Congress in 1999, prohibited state departments of motor vehicles from releasing personal information to bulk distributors, marketers, solicitors, and survey organizations unless an opportunity to "opt-out" was afforded;

(vii)   On October 9, 1999, Congress amended the DPPA, effective June 1, 2000, to prohibit state departments of motor vehicles from releasing personal information for bulk distribution for surveys, marketing, or solicitations, unless the state first obtains the express consent of the person to whom such personal information pertains.  The amendment, known as the "Shelby Amendment," changed the "opt-out" alternative to an "opt-in" requirement to prevent bulk distributors, marketers, solicitors, and survey organizations from obtaining personal information without an individuals' express consent;

(viii)   Defendant, DICKINSON, became aware of the Shelby Amendment shortly after its enactment in 1999, and had several months to ensure that his Department was in compliance with the law, prior to its effective date of June 1, 2000, but he did not do so;

(ix)   On February 2, 2000, Defendant, DICKINSON, wrote a letter to the Tax Collector for Pinellas County, advising that "Congress recently amended the

DPPA and further restricted the state's ability to disseminate personal information contained in motor vehicle records. . . [t]hese changes take effect on June 1, 2000. . .";

      (x)    On January 13, 2000, Defendant, DICKINSON, received a memorandum from the American Association of Motor Vehicles Administrators enclosing a copy of the January 12, 2000 decision of the United States Supreme Court in *Reno v. Condon*, upholding the constitutionality of the DPPA, and rejecting the State of South Carolina's claim that it violated the Tenth and Eleventh Amendments to the Constitution;

      (xi)    On February 2, 2000, Defendant, DICKINSON, received a legal bulletin issued by his legal staff analyzing the decision in *Reno v. Condon* and pointing out that the Supreme Court had held that the DPPA's regulation of state departments of motor vehicles, as owners of databases containing personal information, was a proper exercise of Congress' legislative powers.  The memorandum included the statement that "Congress acted within its authority when it prohibited states from selling personal information from driver's license records, a move intended to protect the privacy of drivers across the country;"

      (xii)    A copy of the decision in *Reno v. Condon*, was received by Defendant, DICKINSON's personal telefax machine at 9:19 a.m. on January 13, 2000, (the morning after the Supreme Court had issued the opinion).  The opinion included the following statements of fact and law, which the Defendant was, or reasonably should have become aware:

(a)  that Congress found that many states sell personal information to individuals and business and that these sales generate significant revenues for the states;

(b)  that the DPPA established a regulatory scheme that restricts the states' ability to disclose a drivers personal information without the drivers' consent;

(c)  that the DPPA generally prohibits any state department of motor vehicles, or officer, employee, or contractors thereof, from knowingly disclosing or otherwise making available to any person or entity, personal information about any individual obtained by the department in connection with a motor vehicle record;

(d)  that under the amended DPPA, states may not imply consent from a driver's failure to take advantage of a state-afforded opportunity to block disclosure, but must rather obtain a driver's affirmative consent to disclose the driver's personal information for use in surveys, marketing, solicitations and other restrictive purposes;

(e)  that the DPPA establishes several penalties to be imposed on states and private actors that fail to comply with its requirements;

(f)  that a state agency that maintains a policy or practice of substantial noncompliance with the DPPA may be subject to a civil penalty imposed by the United States Attorney General of up to $5,000.00 per day;

(g)  that the DPPA did not violate the Tenth or Eleventh Amendments to the Constitution by making state officials unwilling implementers

- 8 -

of federal policy, as argued by the State of South Carolina, and that while the DPPA required time and effort on behalf of state employees, Congress acted properly in imposing these requirements because driver's personal information is an article of commerce, and its sale into the interstate commerce is sufficient to support Congressional regulation.

(xiii)   On February 3, 2000, Defendant, DICKINSON, conducted an executive staff meeting at which Sherry Slepin, his Legislative Affairs Administrator, reported to all present on the Shelby Amendment to the DPPA.  Defendant, Sandra Lambert, was present at that meeting.  There was a discussion concerning the effect of the Shelby Amendment at that meeting, including the fact that after June 1, 2000, it would be unlawful under the DPPA to disclose personal information from motor vehicle records for purposes of bulk distribution for surveys, marketing, or solicitations without the express consent of the person to whom the information pertains;

(xiv)   In her capacity as Legislative Affairs Administrator, Sherry Slepin worked directly with Defendant, DICKINSON's executive staff, including Defendant, DICKINSON, Defendant, Carl Ford, and Defendant, Sandra Lambert, keeping them advised of state and federal laws and regulations having an impact on DHSMV, and sharing information with them regarding changes in the law;

(xv)   During the period between October, 1999, and June, 2000, Sherry Slepin had numerous discussions with Defendant, DICKINSON, concerning the financial impact of the Shelby Amendment on DHSMV;

(xvi)   On April 3, 2000, Sherry Slepin testified on behalf of DHSMV before the Florida House Committee on Transportation during its consideration of House Bill 1967,

- 9 -

a bill to amend Florida's public records law to bring it into compliance with the Shelby Amendment.   During her testimony, she stated that DHSMV would be subject to a $5,000.00 per day fine if it failed to comply with the Shelby Amendment.   In discussing the fiscal impact of the proposed legislation, she stated that the implementation of the "opt-in" requirement of the Shelby Amendment would result in a loss of approximately 1.6 million dollars per year in revenue that would otherwise be received by DHSMV through sales of personal information to direct mail marketers;

(xvii)  In November, 2002, Sherry Slepin resigned from her position with DHSMV to become a private lobbyist.  Among her clients were Auto Data Direct and R. L. Polk & Company, both of which have been long time bulk purchasers of personal information from DHSMV.  After leaving DHSMV, Sherry Slepin continued a personal relationship with Defendant, DICKINSON, and eventually married him on May 19, 2003;

(xviii) Between June 1, 2000, the effective date of the Shelby Amendment, and September 30, 2004, Defendant, DICKINSON directed employees of DHSMV to continue to sell personal information of Florida drivers and motor vehicle owners for bulk distribution for surveys, marketing or solicitations, without the express consent of the persons to whom such personal information pertained, and/or Defendant, DICKINSON, knew that his subordinates were continuing to make such sales in violation of the DPPA, and failed to stop them from doing so.

(xix)   At all times material to this action, Defendant, DICKINSON knew, or reasonably should have known, that after June 1, 2000, the continued sale of personal information of Florida drivers and motor vehicle owners for bulk distribution for surveys,

-10-

marketing or solicitations, without the express consent of the affected individuals, violated the DPPA.

(xx)    At all times material to this action, Defendant, DICKINSON knew, or reasonably should have known, that the "opt in" procedure mandated by the DPPA, as amended by the Shelby Amendment, took precedence over Florida's "opt out" procedure which had been earlier enacted based on the repealed version of the DPPA.

(xxi)   At all times material to this action, Defendant, DICKINSON knew, or reasonably should have known, that he was violating the DPPA by directing and/or permitting employees of DHSMV to continue to sell personal information of Florida drivers and motor vehicle owners for bulk distribution for surveys, marketing or solicitations, after June 1, 2000, without the express consent of the persons to whom such personal information pertained.

### B.    Defendant, CARL FORD:

(i)     Defendant, FORD, has been Director of the Division of Motor Vehicles of DHSMV since February, 2001. He has held various positions in the Division of Motor Vehicles over the past 21 years, including service as Assistant Director for one year prior to assuming duties as Director;

(ii)    As Division Director, Defendant, FORD, is in charge of motor vehicle records for the State of Florida. He oversees approximately 500 employees and supervises all operations of the Division, including the section that processes public information requests. He is responsible for the Division's budget, including the duty to ensure that adequate funding is available to pay for the costs of the Division's operations;

-11-

(iii)    Throughout his years of employment with DHSMV, the Defendant, FORD, was aware that the agency received millions of dollars in annual revenue from the sale of personal information about Florida drivers and motor vehicle owners to bulk distributors who utilized the information for direct marketing purposes;

(iv)    Defendant, FORD, understood that prior to June 1, 2000, the DPPA permitted DHSMV to sell personal information to bulk distributors for marketing purposes because DHSMV maintained a system that allowed Florida drivers and motor vehicle owners to "block" dissemination of their personal information, by filling out a form to "opt-out" of this practice.  Defendant, FORD, became aware of the Shelby Amendment prior to its effective date of June 1, 2000.  He understood that once the Shelby Amendment became law, it would prohibit the sale of personal information from motor vehicle records for bulk distribution for marketing, solicitations and similar purposes without the express consent of the persons to whom the information pertained;

(v)    Prior to the effective date of the Shelby Amendment, Defendant, FORD, knew that DHSMV would be subject to a $5,000.00 a day fine in the event that it sold personal information to bulk distributors for marketing purposes after June 1, 2000, unless it first obtained the express consent of the affected individuals.

(vi)    Prior to June 1, 2000, Defendant, FORD, was aware of the fact that the Shelby Amendment to the DPPA superseded state law to the contrary;

(vii)   Between June 1, 2000, and September 30, 2004, Defendant, FORD, directed employees of the Division of Motor Vehicles to continue to sell personal information of Florida motor vehicle owners for bulk distribution for surveys, marketing or solicitations without the express consent of the persons to whom such personal

information pertained, and/or Defendant, FORD, knew that his subordinates were continuing to make such sales in violation of the DPPA, and failed to stop them from doing so;

(viii)   At all times material to this action, Defendant FORD knew, or reasonably should have known, that subsequent to June 1, 2000, the continued sale of personal information of Florida motor vehicle owners for bulk distribution for surveys, marketing or solicitations, without the express consent of the affected individuals violated the DPPA.

C.   **Defendant, SANDRA LAMBERT**:

(i)   Defendant, LAMBERT, has been employed by the DHSMV since 1981 and for the past ten (10) years has been the Director of the Division of Drivers Licenses.

(ii)   Defendant, LAMBERT, received a Bachelors Degree from Florida State University and has attended graduate school at the University of Miami and Florida State University, studying public administration.

(iii)   Defendant, LAMBERT'S duties and responsibilities include the overall operations of the Division, issuing of drivers licenses, maintaining the records of drivers' licenses in Florida, monitoring of the Court system and the overall budget of the Division as well as strategic and long-range planning.

(iv)   Defendant, LAMBERT'S responsibilities include maintaining the information obtained from a Florida driver when the driver applies for a Florida driver's license.

(v)     Defendant, LAMBERT directs a major division of the department, and serves as a liaison to the Executive Director, the Legislature, the Governor, and the Cabinet.

(vi)    Defendant, LAMBERT'S responsibilities involving strategic planning for DHSMV required her to establish communication and provide liaison to agencies of Florida government and to maintain a current knowledge of laws and rules as they impact program activities at the Division of Drivers Licenses. Defendant, LAMBERT's duties and responsibilities include implementation of new or revised laws to insure compliance.

(vii)   At all times material to this action, Defendant, LAMBERT had knowledge of the DPPA's restrictions on the release of personal information from motor vehicle records, and had prior knowledge that effective June 1, 2000, the DPPA was to be amended to make it unlawful for state departments of motor vehicles to disclose personal information for purposes of bulk distribution for surveys, marketing or solicitations, without obtaining the express consent of the persons to whom the information pertained.

(viii)  Defendant, LAMBERT knew that as of June 1, 2000 the DPPA was to be amended to repeal the "opt out" procedure that had been authorized under the earlier version of the DPPA, and she knew that the Florida statute, which was patterned after the repealed provision of the DPPA, was in conflict with the DPPA, as amended.

(ix)    After learning of the Shelby Amendment and its conflict with the Florida law, Defendant, LAMBERT never requested DHSMV's legal staff to do any

-14-

research on the question of the conflict, never sought legal counsel from DHSMV's legal staff, and never sought a legal opinion from the Florida Attorney General.

(x)     Defendant, LAMBERT knew several months prior to the June 1, 2000 effective date of the Shelby Amendment that the amendment to the DPPA would take effect on that date, but she failed to take any action to ensure that her division would be in compliance with the DPPA, as amended.

(xi)    As part of her duties and responsibilities as the Director of the Division of Drivers Licenses, Defendant, LAMBERT attended an executive staff meeting on February 3, 2000 conducted by Executive Director Fred Dickinson at which DHSMV Legislative Affairs Administrator, Sherry Slepin was present.  At said time and place, the Legislative Affairs Administrator led a discussion of the Shelby Amendment to the DPPA, including the fact that the new law would be effective on June 1, 2000, and as of that date, required state departments motor vehicles to alter their procedures to an "opt in" system from an "opt out" system as a prerequisite to the release of personal information for bulk distribution for surveys, marketing or solicitations.

(xii)   Defendant, LAMBERT received correspondence from the American Association of Motor Vehicle Administrators, in early 2000 advising her of the Shelby Amendment, and proposed methods of compliance by state agencies with the federal law.  Thereafter, Defendant, LAMBERT took no action to comply with DPPA.

(xiii)  Prior to the effective date of the Shelby Amendment, Defendant, LAMBERT knew that DHSMV would be subject to a $5,000.00 a day fine in the event that it sold personal information to bulk distributors for marketing purposes after June 1, 2000, unless it first obtained the express consent of the affected individuals.

-15-

(xiv)    Prior to June 1, 2000, Defendant, LAMBERT, was aware of the fact that the Shelby Amendment to the DPPA superseded state law to the contrary;

(xv)    Between June 1, 2000, and September 30, 2004, Defendant, LAMBERT, directed employees of the Division of Drivers Licenses to continue to sell personal information of Florida drivers for bulk distribution for surveys, marketing or solicitations without the express consent of the persons to whom such personal information pertained, and/or Defendant, LAMBERT, knew that her subordinates were continuing to make such sales in violation of the DPPA, and failed to stop them from doing so;

(xvi)    At all times material to this action, Defendant LAMBERT knew, or reasonably should have known, that subsequent to June 1, 2000, the continued sale of personal information of Florida drivers for bulk distribution for surveys, marketing or solicitations, without the express consent of the affected individuals violated the DPPA

13.    Through Defendants' actions, DHSMV has sold to numerous persons and entities Plaintiffs' and proposed class members' personal information resulting in the State of Florida receiving over twenty-seven million ($27,000,000.00) dollars per year since June 1, 2000.

14.    The Defendants' acts and practices described above are wholly unrelated to the lawful administration and enforcement of the laws of the State of Florida relating to the ownership, registration, and operation of motor vehicles within the state, and instead constitute an invasion of Plaintiffs' and the Class Members' rights of privacy in violation of the DPPA, the 5th and 14th Amendments of the United States Constitution, and 42 U.S.C. § 1983.

-16-

Collier, et al. v. Dickinson, III, et al.
District Court Case No. 04-21351-CIV-Graham
Magistrate Judge Garber

## CLASS REPRESENTATION ALLEGATIONS

15.     This action is brought as a class action.  The class consists of all persons whose personal information was sold or provided to third parties by DHSMV for uses not permitted by the DPPA from June 1, 2000 through the present.  Excluded from the class are members of the federal judiciary, the Defendants and their attorneys.

16.     The members of the class are so numerous that separate joinder of each member is impracticable.  The members of the class are geographically dispersed throughout Florida and other places.

17.     The claims of Plaintiffs raise questions of law or fact common to the questions of law or fact raised by the claims of each member of the class.  The common questions include whether Defendants' conduct constitutes an invasion of the Plaintiffs' and Class Members' rights of privacy in violation of the DPPA, the 5th and 14th Amendments to the U.S. Constitution and 42 U.S.C. § 1983, by knowingly authorizing, directing, ratifying, approving, acquiescing in, committing or participating in the disclosure of Plaintiffs' and the Class Members' personal information to third parties for bulk distribution for surveys, marketing or solicitations, or for other uses not permitted by the DPPA, without the express consent of the persons to whom the information pertains.

18.     The interests of Plaintiffs are coextensive with the other members of the class on these questions.

19.     There are no individual questions that predominate over common questions of law or fact.

20.     The claims of Plaintiffs are typical of the claims of each member of the class, which arise from the same operative facts and are based upon the same legal principles.

-17-

Plaintiffs' claims are typical of the claims of each member of the class because between June 1, 2000 and to the present, Plaintiffs were the owners of one or more motor vehicles registered with DHSMV and held driver's licenses issued by DHSMV where personal information was maintained by DHSMV that pertained to Plaintiffs. Such information was, and continues to be, permitted by Defendants to be extracted from DHSMV's motor vehicle records and compiled and reformatted into customized mailing lists for sale to third parties for purposes not permitted by the DPPA, without the express consent of Plaintiffs. Likewise, during the same time period, DHSMV maintained motor vehicle records containing personal information pertaining to each of the members of the proposed class, and Defendants have permitted such information to be taken from DHSMV's motor vehicle records and compiled and reformatted into customized mailing lists for sale to third parties for purposes not permitted by the DPPA, without the express consent of the proposed class members. The requirement of typicality is also satisfied because proof of the elements of Plaintiffs' claims will demonstrate Defendants' liability to all other members of the class.

21.     Plaintiffs will fairly and adequately protect the interests of the class and have engaged the services of counsel experienced in class action litigation. Plaintiffs are committed to vigorously litigating this matter and will fairly and adequately protect and represent the interests of each member of the proposed class. Moreover, Plaintiffs' interests are coextensive with the interests of the other members of the proposed class, with whom they share a common right of recovery based upon the same core of operative facts.

22.     This action is maintainable on behalf of the proposed class in accordance with Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to Plaintiffs' and the Class Members' claims predominate over any question of law or fact affecting individual members of

-18-

the class, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy.  Defendants' actions in permitting DHSMV's employees to remove, disclose and sell to third parties personal information pertaining to Plaintiffs and the Class Members, without their express consent—in violation of the DPPA and the U. S. Constitution—generally affects Plaintiffs and the Class Members in the same way—by invading their rights of privacy—as a result of which Plaintiffs and the proposed class members have sustained monetary damages.

23.     The assertion of separate individual claims is impractical and cost prohibitive not only for individual claimants, but for Defendants and the court system itself.  The interest of the proposed Class Members in individually controlling the prosecution of separate claims against Defendants is small because the value of each individual's personal information, standing alone, is likely too small to justify an individual civil action.  Maintaining this action as a class action in this forum is desirable, as it will permit the claims of Plaintiffs and the Class Members to be adjudicated efficiently, based upon a common right of recovery arising from the same set of facts.  Management of this class claim is likely to present significantly fewer difficulties than those presented in many class claims, where both liability and damages depend upon individual factual determinations.

## CLAIMS FOR RELIEF

### COUNT I

24.     Plaintiffs incorporate paragraphs 1 through 23 above as if fully set forth herein.

25.     Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

-19-

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." The policies, procedures, practices and acts of Defendants described above, have subjected Plaintiffs and the Class Members, to the deprivation of their rights of privacy, as secured to them by the United States Constitution and the DPPA, and are therefore in violation of 42 U.S.C. § 1983.

26.     As a proximate result of Defendants' conduct as set forth above, Plaintiffs and the Class Members have sustained monetary damages.

27.     Plaintiffs have been required to engage the services of the undersigned attorneys to prosecute this action. Pursuant to 42 U.S.C. § 1988, Plaintiffs are entitled to an award of reasonable attorneys' fees and costs in this action.

WHEREFORE, Plaintiffs, individually and on behalf of the Class Members, demand judgment against Defendants, jointly and severally, for damages, including pre-judgment interest, reasonable attorney's fees, and all costs of this action.

## COUNT II

28.     Plaintiffs incorporate paragraphs 1 through 23 above as if fully set forth herein.

29.     Defendants are "persons" within the meaning of 18 U.S.C. § 2724(a) and 18 U.S.C. § 2725(2).

30.     From June 1, 2000 to the present, Defendants have been knowingly obtaining, disclosing, or using "personal information" as defined in 18 U.S.C. § 2725(3) and "highly restricted personal information" as defined in 18 U.S.C. § 2725(4), for purposes not permitted by the DPPA.

31.     From June 1, 2000 to the present. Defendants have been knowingly disclosing Plaintiffs' and the Class Members' personal information and highly restricted personal information to third parties whom they knew were using the personal information and highly restricted personal information for purposes not permitted by the DPPA.

32.     Defendants have been knowingly obtaining, disclosing, or using Plaintiffs' and the Class Members' personal information and highly restricted personal information for purposes not permitted by the DPPA without the express consent of the persons to whom the information pertains.

33.     Defendants' actions violate the DPPA.

34.     Pursuant to 18 U.S.C. § 2724, Defendants are liable to Plaintiffs and the Class Members for actual damages, but not less than liquidated damages in the amount of $2,500 per individual, per occurrence, plus reasonable attorneys' fees and all other costs associated with this litigation.

35.     Plaintiffs have been required to engage the services of the undersigned attorneys to prosecute this action.  Pursuant to 18 U.S.C. § 2724(b)(3), Plaintiffs and the Class Members are entitled to recovery of their reasonable attorneys' fees plus other litigations costs reasonably incurred.

WHEREFORE, Plaintiffs, individually, and on behalf of the Class Members, request this Honorable Court to enter judgment against Defendants, jointly and severally, for damages, reasonable attorneys' fees and all other litigation costs reasonably incurred.

Collier, et al. v. Dickinson, III, et al.
District Court Case No. 04-21351-CIV-Graham
Magistrate Judge Garber

## TRIAL BY JURY

Plaintiffs, on behalf of themselves and the Class Members, demand trial by jury on all issues so triable.

Respectfully submitted,

BY: _____

**DAVID D. WELCH**
Florida Bar No. 109537
**WELCH & FINKEL**
2401 E. Atlantic Boulevard, Suite 400
Pompano Beach, FL 33062
Tele: (954) 943-2020 / Fax:  (954) 782-1552

**LAWRENCE D. GOODMAN**
Florida Bar No. 712647
**DEVINE GOODMAN PALLOT & WELLS, P.A.**
777 Brickell Avenue, Suite 850
Miami, Florida 33131
305-374-8200 Telephone
305-374-8208 Facsimile

**PETER A. PORTLEY**
Florida Bar No. 112563
**PORTLEY AND SULLIVAN**
2211 E. Sample Road
Lighthouse Point, FL 33064
Tele: (954) 781-7600 / Fax:  (954) 941-3469

**TOD ARONOVITZ**
Florida Bar No. 186430
**BARBARA PEREZ**
Florida Bar No. 989304
**STEVEN JAFFE**
Florida Bar No. 390770
**ARONOVITZ TRIAL LAWYERS**
Suite 2700 – Museum Tower
150 W. Flagler Street
Miami, Florida 33130
305-372-2772 Telephone
305-375-0243 Facsimile

**JOEL S. PERWIN**
Florida Bar No. 316814
**JOEL S. PERWIN, P.A.**
Alfred I. DuPont Bldg. Suite 1422
169 E. Flagler Street
Tele:  (305) 779-6090
Fax:  (305) 779-6095

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Second Amended Class Action Complaint was sent via U.S. Mail and Facsimile Transmission this 30th day of March, 2005 to Charles J. Crist, Jr., Esq., Attorney General, and Jason Vail, Esq., Assistant Attorney General, Office of the Attorney General, PL-01, The Capitol, Tallahassee, Florida 32399, and Florida Department of Financial Services, 200 E. Gaines Street, Tallahassee, Florida 32399.

BY: _____
DAVID D. WELCH, ESQ.