UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-21351-CIV-MARTINEZ-BROWN

MARY ANN COLLIER, ARTHUR L.
WALLACE, ROY McGOLDRICK and
ROBERT PINO,

       Plaintiffs,

vs.

FRED O. DICKINSON, III, CARL A. FORD
and SANDRA LAMBERT,

       Defendants.

                                /

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT AGREEMENT AND RELEASE, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS, APPOINTMENT OF CLASS COUNSEL, APPROVAL AND DIRECTION OF NOTICE PLAN, AND APPOINTMENT OF NOTICE ADMINISTRATORS

Plaintiffs, MARY ANN COLLIER, ARTHUR L. WALLACE, ROY McGOLDRICK and

ROBERT PINO, on behalf of themselves and all others similarly situated ("Plaintiffs"),[1] submit

this Motion and Memorandum of Law in Support of Preliminary Approval of Proposed

Settlement Agreement and Release, Conditional Certification of Settlement Class, Appointment

of Class Counsel, Approval and Direction of Notice Plan, and Appointment of Notice

Administrators.    This Motion is unopposed by Defendants, FRED O. DICKINSON, III,

CARL A. FORD and SANDRA LAMBERT ("Defendants"), who consent to entry of an order

approving the Parties' Settlement Agreement and Release ("Settlement Agreement").    In this

Motion, Plaintiffs request the Court to:

---

[1] Capitalized words in this Motion correspond to defined terms in the Settlement Agreement.

1

(1) Conditionally certify for settlement purposes the Plaintiffs' Class described herein;

(2) Preliminarily approve the proposed settlement set forth in the Settlement Agreement, which has been filed with the Court this date;

(3) Appoint Plaintiffs as representatives of the Plaintiff Class;

(4) Appoint Class Counsel;

(5) Appoint Lead Counsel for the Plaintiff Class; and,

(6) Schedule a Final Fairness Hearing.

## I.    INTRODUCTION

### A.    The Case

1.    On June 7, 2004, Plaintiffs, on behalf of themselves and all others similarly situated, filed a class action complaint styled Mary Ann Collier, Arthur L. Wallace, Roy McGoldrick and Robert Pino v. Fred O. Dickinson, III, Carl A. Ford and Sandra Lambert, Michael D. McCaskill, Boyd Walden, Phillip Shelton, David M. Perryman, Lawrence J. Bilbo, and the State of Florida, Department of Financial Services, Case No. 04-21351 ("Complaint"), seeking relief for Defendants' alleged violations of the *Driver's Privacy Protection Act*, 18 U.S.C. §§2721-2725 and for alleged violations of Title 42 U.S.C. §1983 (the "Action").   On July 6, 2004, Plaintiffs filed an Amended Complaint, dropping the State of Florida, Department of Financial Services as a defendant, and on April 22, 2005, Plaintiffs filed a Second Amended Complaint, dropping all remaining defendants, with the exception of Fred O. Dickinson, III, Carl A. Ford, and Sandra Lambert.   Simultaneously with the filing of the Settlement and this

Motion, Plaintiffs have filed an unopposed motion for leave to file a Third Amended Complaint, which would be the operative Complaint for purposes of the settlement and this Motion.[2]

2.      The Driver's Privacy Protection Act (the "DPPA" or the "Act") was enacted in 1994 in response to privacy and safety concerns, arising from the public's unrestricted access to the personal information contained in state motor vehicle department records, and the common practice in many states, including Florida, of generating revenue by selling that information. (*Complaint* at ¶ 9) Among other things, the DPPA prohibits any person from knowingly obtaining, disclosing, or using "personal information" and/or "highly restricted personal information" contained in an individual's "motor vehicle record" for marketing or other purposes not permitted by the DPPA without the individual's prior express consent. 18 U.S.C. §§2721 and 2725.

3.      Title 42 U.S.C. § 1983 provides that

"[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

4.      According to the Complaint, Plaintiffs have owned one or more vehicles registered with the State of Florida, Department of Highway Safety and Motor Vehicles ("DHSMV"), and have held Florida driver licenses issued by the DHSMV. (*Complaint* at ¶ 4). To register their vehicles and obtain driver licenses, Plaintiffs were required to and did provide the DHSMV with certain "personal information," as defined in the DPPA. *Id.* The DHSMV entered this personal information into a computer database of motor vehicle records maintained

---

[2]  In the event that this Settlement Agreement is not finally approved, the third Amended Complaint shall be deemed withdrawn and this action will proceed on the Second Amended Complaint and the Answer thereto.

and administered by the DHSMV, which contains personal information of all licensed drivers and registered motor vehicle owners in the State of Florida. *Id.*

    5.    Defendant, Fred O. Dickinson, III ("Dickinson") was, as of the date the Complaint was filed, Executive Director of the DHSMV. (*Complaint*, at ¶ 5). Dickinson has since resigned from that position. Defendant, Carl A. Ford ("Ford") is Director of the Division of Motor Vehicles, a branch of the DHSMV. *Id.*, at ¶ 6. Defendant, Sandra Lambert ("Lambert") is Director of the Division of Driver Licenses, a branch of the DHSMV. *Id.* at ¶ 7. Plaintiffs alleged in the Complaint that during the period commencing June 1, 2000, and continuing to the date of the filing of the Complaint, the Defendants, in their individual capacity, knowingly, repeatedly, and without Plaintiffs' consent, took Plaintiffs' "personal information," which had been maintained by the DHSMV, compiled and reformatted it into customized mailing lists, and sold these lists to various third parties for bulk distribution for surveys, marketing, solicitations, or other purposes not permitted by the DPPA. (*Complaint*, at ¶ 11). The information at issue was identified in the Complaint as "personal information," as defined by the DPPA, 18 U.S.C. §2725. *Id.*, at ¶ 4.

    6.    The Defendants moved to dismiss the Complaint, and on March 30, 2006, the Court entered an order granting the motion, finding that the alleged facts did not show that the Defendants' conduct violated a constitutional or statutory right for which the Plaintiffs may sue under §1983, and that both Plaintiffs' §1983 action and the direct action under the DPPA were barred under the doctrine of qualified immunity. The Plaintiffs appealed and on February 12, 2007, the Eleventh Circuit Court of Appeals reversed, holding that 1) the plain language of the DPPA clearly, unambiguously, and expressly creates a statutory right which may be enforced by enabling aggrieved individuals to sue persons who disclose their personal information in violation of the DPPA; 2) the statutory right of privacy created by the DPPA is

4

enforceable separately under Section 1983; and, 3) the plain language of the statute and the case law gave fair warning to Defendants that releasing the information in question violated clearly established federal law and that, accordingly, the Defendants were not entitled to qualified immunity. The Defendants filed a motion for rehearing and rehearing *en banc*, which was denied by the Court on May 4, 2007. On August 14, 2007, the Defendants filed a petition in the United States Supreme Court for a writ of *certiorari* to review the judgment of the Eleventh Circuit, and on January 7, 2008, the Supreme Court denied the petition.

7.    The Defendants filed an Answer, denying liability, and asserting various affirmative defenses, and the action was set for trial by jury in July, 2008. In the scheduling order, the Court ordered the parties to submit the dispute to mediation before a qualified mediator, prior to trial.

**B.    The Settlement**

1.    Before filing the Action and after litigation was commenced, counsel for Plaintiffs conducted a thorough examination and evaluation of the relevant law and facts to assess the merits of Plaintiffs' claims and potential claims and to determine how best to serve the interests of Plaintiffs and the Class (as defined below).

2.    In the course of their examination and litigation against Defendants, counsel for Plaintiffs reviewed thousands of documents provided by DHSMV, the Defendants, and numerous third parties, and deposed Defendants and numerous third parties.

3.    Based upon the investigation, discovery, sworn testimony, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Defendants have agreed to settle this action pursuant to the provisions of the Agreement after considering such factors as: (1) the benefits to Plaintiffs and the Class under the terms of the Agreement; (2) the attendant risks and uncertainty of litigation, especially in complex actions such as this, as

5

well as the difficulties and delays inherent in such litigation; (3) the desirability of consummating the Agreement promptly in order to effectuate the relief set forth below in a timely manner; and (4) Defendants' limited financial resources, which make resolution of the Action on a class basis for nominal damages and injunctive relief appropriate.

4.      On March 14, 2008, the Court ordered the parties to participate in mediation. The parties chose Dominic Caparello, Esq. as mediator, a highly qualified mediator with years of experience. Prior to mediation, the Parties conducted investigation, discovery, and evaluation of the facts and law, relating to the matters alleged in the pleadings. Thereafter the parties participated in lengthy settlement negotiations and several formal mediation sessions ultimately reaching an agreement to settle this action (the "Litigation") pursuant to the provisions in the Settlement Agreement.

5.      The Settlement Agreement was reached after considering such factors as: (1) the benefits to Plaintiffs and the Class under the terms of the Settlement Agreement; (2) the strength of Plaintiffs' case weighed against the settlement offer; (3) the attendant risks and uncertainty of litigation, especially in complex actions such as this, which involve allegations relating to privacy and violations based on the DPPA, which is a little-known statute; (4) the attendant risks and uncertainty of establishing liability and/or damages; (5) Defendants' vigorous defense of the litigation and continued denial of the claims and facts contained in the Class Action Complaint; (6) the desirability of consummating the Settlement Agreement promptly, to safeguard the privacy and security of Plaintiffs and the Class Members' personal information; and (7) Defendants' limited finances to pay a recovery of monetary damages.

6.      Pursuant to the Settlement Agreement, Plaintiffs have filed with the Court an unopposed Motion for Leave to File a Third Amended Class Action Complaint seeking declaratory and injunctive relief against the Defendants, in addition to monetary damages.

7.    Plaintiffs and their respective counsel believe this is a fair, adequate and reasonable settlement which the Court should approve.

## II.    THE TWO-STEP SETTLEMENT APPROVAL PROCESS

"[I]n analyzing any settlement, 'the clear policy in favor of encouraging settlements must . . . be taken into account.'" *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D., 457, 466 (S.D. Fla. 2002)(citation omitted); *see Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005)(same); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) (same). Approval of a class-action settlement is a two-step process. In the first step, the Court determines whether the proposed settlement should be preliminarily approved. *See,* David F. Herr, *Annotated Manual for Complex Litigation Fourth* §21.632 (2004). In the second step, after hearing from any objectors and being presented with declarations and materials to support the fairness of the settlement, the Court makes a final decision whether the settlement should be finally approved. *See id.* §§21.633-35.

At the preliminary-approval step, the Court is required to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* § 21.632.   Additionally, in cases such as this where a class has not yet been certified, the Court must determine, at the preliminary-approval step, whether "the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)" — in this case Rule 23(b)(2). *Manual for Complex Litigation Fourth* §21.632 (2004). The court must also apply the mandates of Rule 23(e) with respect to dismissal of class actions.

## III.    THE PROPOSED SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED

"A class may be certified 'solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue.'" *Borcea v. Carnival Corp.*,

238 F.R.D. 664, 671 (S.D. Fla. 2006)(citing *Woodward v. NOR-AM Chem. Co.*, 1996 WL

1063670 * 14 (S.D.Al.1996) (*citing, In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173-78 (5th

Cir.1979)). For purposes of settlement, Plaintiffs seek certification of the following "Plaintiff

Class" under Federal Rule of Civil Procedure Rule 23(b)(2):

> All natural persons who held a Florida driver's license, identification card or motor
> vehicle registration at any time between June 1, 2000 and September 30, 2004.

Settlement Agreement at ¶1.E.

### A.    The Four Prerequisites of Rule 23(a) are Clearly Satisfied.

In order for any class to be certified, the four prerequisites of Federal Rule of Civil

Procedure Rule 23(a) must be satisfied. This Court in *Fabricant v. Sears Roebuck*, expressed the

requirements of Rule 23(a) as follows:

> Rule 23(a) provides that one or more members may sue on behalf of all only if (1) the
> class is so numerous that joinder of all members is impracticable ('numerosity'), (2)
> there are questions of law or fact common to the class ('commonality'), (3) the claims
> of the representative are typical of the claims of the class ('typicality'), and (4) the
> representatives parties must fairly and adequately protect the interest of the class
> ('adequacy').

202 F.R.D. 310, 313 (S.D. Fla. 2001).

The Plaintiff Class defined above satisfies all of the requirements of Rule 23(a).

### 1.    Numerosity.

The numerosity requirement under Rule 23(a)(1) requires "that the class is so

numerous that joinder is impracticable, not impossible. *Id.* (citing *Kreuzfeld, A.G. v.*

*Carnehammar*, 138 F.R.D. 594, 599 (S.D.Fla.1991); *see also Armstead v. Pingree*, 629 F.Supp.

273, 279 (M.D.Fla.1986) (explaining that the focus of the numerosity inquiry is not whether the

number of proposed class members are "too few" to satisfy the Rule, but "whether joinder of

proposed class members is impractical").

8

There is no definite standard as to the size of a given class. *Fabricant v. Sears Roebuck* 202 F.R.D. at 313; *See Kilgo v. Bowman Transp. Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (certifying a class where at least thirty-one class members were identified. Furthermore, rather than knowing the "precise number of class members," parties seeking class certification "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 699 (M.D.Fla.2000) (citing *Evans v. U.S. Pipe & Foundry* 696 F.2d 925, 930 (11th Cir.1983)).

Based on the depositions of Defendants, and other witnesses, the review of documents produced in discovery and pre-suit investigation, Plaintiffs confirmed that the Plaintiff Class for which certification is sought contained approximately 18,000,000 Members. Thus, the requirement of numerosity set forth in Rule 23(a)(1) is easily met.

### 2.   Commonality.

The "commonality" prerequisite set forth in Rule 23(a)(2) requires that there be questions of law or fact common to the class. Commonality is satisfied when there is at least one issue affecting all or a significant number of proposed class members." *Fabricant v. Sears Roebuck,* 202 F.R.D. at 313; *Agan v. Kathzamn & Korr, P.A.* 222 F.R.D. 692 (S.D.Fla.2004) (stating that commonality is generally satisfied when a plaintiff alleges that defendants have engaged in a standardized course of conduct that affects all class members.) Federal courts recognize that the requirement under Rule 23(a)(2) that "questions of law or fact common to the class" exist is to be read liberally. *See, e.g. Armstead v. Pingree,* 629 F. Supp at 280.

In this Litigation, there are several common questions of law or fact arising out of the common course of conduct by Defendants. These common factual and legal questions include the following as set forth in the Complaint:

9

(A)    Whether Defendants, between June 1, 2000 and September 30, 2004, knowingly obtained, disclosed or used individuals' "personal" and/or "highly restricted personal" information contained in the motor vehicle records of DHSMV, for marketing and other purposes not permitted under the DPPA;

(B)    Whether Defendants or the State of Florida received the express written consent of Class Members, prior to Defendants obtaining, disclosing or using their "personal" and/or "highly restrict personal" information contained in motor vehicle records kept by DHSMV; and

(C)    To what extent Defendants are liable to Plaintiffs and Class Members for damages and equitable relief under the DPPA.

Commonality is further satisfied because Defendants obtained, disclosed or used all of Plaintiff Class members' DPPA-regulated information in the same manner from motor vehicle records maintained by the DHSMV. Accordingly, like numerosity, the commonality prerequisite is easily met.

### 3.    Typicality.

The third prerequisite for maintaining a class action is that the claims of the class representative be "typical of the claims or defenses of the class." *Fed.R.Civ.P.*, Rule 23(a)(3) "In other words, typicality requires a nexus between the class representative's claims or defenses and the common questions of fact or law which unite." *Fabricant v. Sears Roebuck,* 202 F.R.D. at 313 (citing *Kornberg v. Carnival Cruise Lines* 741 F. 2d 1332, 1337 (11th Cir. 1984)). A plaintiff's claims are typical of the claims of the class "if they stem from the same event, practice, or course of conduct that forms the basis of the class claims and are based upon the same legal or remedial theory." *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996).

The claims of the named Plaintiffs in this case are typical of the Plaintiff Class because all such claims arise from a common course of conduct involving the obtainment, disclosure and/or use by Defendants of Plaintiff Class Members' "personal" and/or "highly personal" information contained in the motor vehicle records maintained by DHSMV allegedly for marketing and other purposes, in violation of the DPPA.

### 4.     Adequacy of Representation.

The fourth and final prerequisite of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." *Fed.R.Civ.P.* 23(a)(4) "Rule 23(a)(4)'s adequacy requirement has two components: (1) the class representatives have no interests antagonistic to the class and (2) class counsel possesses the competence to undertake the litigation. *Fabricant v. Sears Roebuck,* 202 F.R.D. at 314.

Here, Plaintiffs have no interests that are adverse or antagonistic to the interests of the Settlement Class. Rather, Plaintiffs and the Plaintiff Class share common interests, and the Plaintiffs have shown their commitment to the vigorous pursuit of these common claims. The Settlement Agreement provides for declaratory and injunctive relief and nominal damages incidental thereto, that will vindicate the Plaintiffs' and Plaintiff Class Members' rights and equally benefit them by ensuring Defendants' compliance with the DPPA and the protection of their DPPA regulated information.

Plaintiffs' Counsel has conducted pre-suit investigation and formal discovery, reviewing extensive documentary evidence and adducing sworn testimony from the Defendants and many other witnesses. Because of the nature of Litigation, much of the discovery involved the intricacies and uses of computerized data containing Personal Information derived from motor vehicle records. Plaintiffs' Counsel deposed the Defendants and numerous third parties.

Moreover, this Litigation required specialized experience and expertise in privacy law, remedies, software, and information technology that few firms may have been able to marshal to prosecute the Litigation successfully. Plaintiffs' Counsel are uniquely qualified and experienced counsel, all of whom have extensive experience in complex litigation such as this,[3] and class actions generally. Plaintiffs' Counsel have also sought and have been granted class certification in dozens of other cases in both federal and state courts, including this Court.

Accordingly, the Plaintiffs and Plaintiffs' Counsel are adequate representatives of the Settlement Class under Rule 23(a)(4).

**B.    The Class Should be Certified Under Rule 23(b)(2).**

Once the Rule 23(a) prerequisites are satisfied, in order to obtain class certification, Plaintiffs must demonstrate further that the action satisfies one or more of the three subdivisions of Rule 23(b). *Fabricant*, 202 F.R.D. 310, 313. In this Litigation, Plaintiffs seek certification of a declaratory relief/injunctive settlement class only, with incidental, nominal damages, and as

---

[3] Proposed Lead Class Counsel, Tod Aronovitz and David Welch, and several other counsel for Plaintiffs in this Litigation have been involved in eleven DPPA cases which were eventually consolidated in this District: Linda Brooks and Richard Fresco v. Auto Direct Data, et. al., No. 0307410 (17th Cir. Ct. Broward Co.), filed April 24, 2003, and removed to this Court on May 29, 2003. In the Southern District of Florida: Levine v. Reed Elsevier, Inc., No. 03-cv-80490, filed May 30, 2003; Levine v. ChoicePoint Pub. Records, Inc., et al., No. 03-cv-80491, filed May 30, 2003. In the Middle District of Florida: Heretick, et al. v. R.L. Polk & Co., No. 03-cv-1250, filed June 16, 2003; Heretick, et al. v. Experian Info. Servs. Inc., No. 03-cv-1251, filed June 16, 2003; Rosen v. Reed Elsevier, Inc., No. 03-cv-261, filed May 29, 2003; Rosen v. Seisint, Inc., No. 03-cv-263, filed May 30, 2003; Rosen v. ChoicePoint, Inc., No. 03-cv-264, filed May 30, 2003; Rosen v. Acxiom Corp., No. 03-cv-267, filed June 2, 2003; Rosen v. eFunds Corp., No. 03-cv-269, filed June 3, 2003; Heretick v. Automotive Directions, Inc., No. 03-cv-1278, filed June 20, 2003. With the exception of Fresco, these DPPA cases were later voluntarily dismissed and effectively merged into the Fresco case. In addition, some of Plaintiffs' counsel have represented the plaintiffs and class members in other DPPA actions including, Davis v. Bank of America, N.A., Case No. 05-80806-civ-Middlebrook/Johnson; Rios v. Direct Mail Express, Inc., Case No. 05-61689-civ-Cooke/Brown; and Pino v. Warranty Acceptance Corporation, Case No. 05-61576-civ-Jordan/Klein.

such limit their request for class certification under Rule 23(b)(2).[4]  The Parties' Settlement Agreement provides for equitable relief and a monetary credit incidental to the equitable relief as follows:

  1. **Equitable Relief.**  As part of the settlement of this action, the Defendants have elicited and have obtained the agreement of the DHSMV to implement the following equitable relief:

    (A) **Transparency.**

     (1) The DHSMV will print a statement on Florida driver license ("DL") and Florida motor vehicle registration ("DMV") renewal notices and on GoRenew.com that refers the recipients of such renewal notices to a webpage which specifically addresses Florida and federal DPPA law and policies (the "DPPA webpage"). The DHSMV will also post similar information in DHSMV offices visited by the public.

     (2) Within the DPPA webpage the DHSMV will create a link to its public records request site that will include information for obtaining the name and address of those companies that, and persons who, have purchased DPPA-protected information ("DPI") under a DPPA exemption, including authorized re-sellers, along with a description of the records requested and the DPPA exemption under which the records were requested and provided. There will be a notation on the DPPA webpage that explains the DHSMV is unable to determine which individual records were contained in these disclosures of DPI by the DHSMV to third parties.

---

[4] The DPPA provides for injunctive relief in 18 USC § 2724(b)(4). Nominal damages are appropriate under 42 U.S.C. § 1983 in the absence of proof of actual damages. *Cummings v. Connell* (2005, CA9 Cal) 402 F3d 936; *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000); *Kelly v. Curtis*, 21 F.3d 1544, 1557 (11th Cir. 1994); *Carey v. Piphus*, 435 U.S. 247, at 266, 98 S. Ct. 1042, at 1054, 55 L. Ed. 2d 252 (1978).

(3)    The DHSMV will create a webpage that the public will be referred to in ¶1(A)(1) above *(i.e.*, the DPPA webpage), which will be dedicated to and set forth applicable federal and Florida law and policies pertaining to the DPPA. This webpage will include a link to the public records request webpage described in ¶1(A)(2) above.

(B)    **Personnel Training.**  The DHSMV shall prepare and implement written DPPA policies and procedures, to be followed by training in DPPA compliance, for DHSMV personnel tasked with responding to requests from third parties for DPI.

(C)    **Customer Credentialing.**  The DHSMV will modify form HSMV 85054 and each of its memoranda of understanding with resellers of DPI to require the requestor of DPI to the state intended use of such DPI, under penalty of perjury, as well as affirmative statements that such DPI will only be used for DPPA-permitted purposes.

(D)    **Adherence to Requirements of DPPA.**  The Defendants shall not knowingly obtain, disclose, or use Personal information from DHSMV motor vehicle records for purposes not permitted by the DPPA.

2.    **Monetary Relief.**    The DHSMV will provide a $1.00 credit to each Class Member who registers, or renews the registration of a motor vehicle with DHSMV between July 1, 2009 and June 30, 2010, inclusive. Each Class Member shall be entitled to only one $1.00 credit regardless of the number of motor vehicles he or she registers during the applicable period. If a Class Member registers or renews the registration on more than one motor vehicle during the applicable period, the $1.00 credit shall be applied to the first of such motor vehicles so registered.

3.    **Expense of Relief.** Parties agree that the injunctive relief called for in this Agreement is of substantial, calculable value and benefit to the Class. The DHSMV shall bear any and all costs associated with its compliance with the relief called for under this Agreement.

14

"The general rule that 'a class action suit seeking only declaratory and injunctive relief does not bar subsequent individual damage claims by class members, even if it is based upon the same events.'" *Coleman*, 220 F.R.D. at 81 (collecting cases).

Under Rule 23(b)(2), movants must show that the opposing party has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief . . . with respect to the class as a whole." *Fed. R. Civ. P.* 23(b)(2); *see Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1339-40 (11th Cir. 2006). In addition, any request for monetary relief in the litigation must be "incidental" to the injunctive relief before certification under Rule 23(b)(2) is appropriate. *See Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001). This class-action settlement satisfies both of these requirements.

1.      **Defendant Has Acted on Grounds Generally Applicable to the Settlement Class, Making Final Injunctive Relief Appropriate to the Plaintiff Class as a Whole**

The inquiry into whether a defendant acted on grounds generally applicable to the class is often considered to be encompassed by the commonality requirement of Rule 23(a). *See, Diaz v. Hillsborough County Hosp. Auth.*, 165 F.R.D. 689, 695 (M.D. Fla. 1996) ("The requirement that the defendant act on grounds generally applicable to the 23(b)(2) class is encompassed in the commonality requirement of Rule 23(a)"). Here, if the Plaintiffs' allegations are taken as true, Defendants have clearly acted on grounds generally applicable to the class by knowingly obtaining, disclosing and/or using Plaintiff Class members' DPPA-regulated information for marketing purposes, or other purposes not permitted by the DPPA, without the required express consent.

2.    **This Is a Proper Case for a Rule 23(b)(2) Settlement Because Injunctive, or Declaratory Relief Predominates Over Monetary Relief**

In addition to uniform conduct *vis-à-vis* class members, the Advisory Committee Notes to Rule 23(b)(2) explain that a class action seeking monetary damages in addition to injunctive or declaratory relief can be maintained under that rule so long as the action does not relate "predominantly to money damages." Rule 23(b)(2) certification contemplates that injunctive relief play a central role in a plaintiff's case. *U.S. v. Trucking Employers, Inc.*, 75 F.R.D. 682, 692 (D.C. Cir. 1977).

In *Murray v. Auslander*, the Eleventh Circuit addressed the kinds of relief appropriate for certification under Rule 23(b)(2), recognizing that monetary damages could be recovered in a Rule 23(b)(2) class action if the monetary damages were merely "incidental." 244 F.3d 807, 812 (11th Cir. 2001). Quoting *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415 (5th Cir. 1998) the *Murray* court explained:

> By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief.... Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established.... Liability for incidental damages should not ... entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions. 244 F.3d 807, 812.

Applying the Eleventh Circuit's analysis in *Murray*, this Court has held that statutory damages are incidental to injunctive-relief claims in a case seeking greater accessibility for persons with disabilities, and can therefore be certified as part of a Rule 23(b)(2) settlement class. In *Association for Disabled Americans*, the plaintiff alleged that the defendant had violated the ADA when it failed to provide appropriate access to gasoline stations and convenience stores. 211 F.R.D. 457, 459. The parties entered into a class settlement that: (1)

16

provided broad injunctive relief addressing accessibility; (2) preserved the class members' claims for actual damages; and (3) released the class members' claims for minimum or statutory liquidated damages. *Id.* at 465. Judge Gold rejected the objectors' argument that the release of statutory damages precluded certification under Rule 23(b)(2):

> [Objectors'] argument . . . must fail because the Release does not bar actual damage claims. Rather, the only damage claims covered are claims for statutory damages under the laws of those few states that provide for them. By statutory damages, the parties mean only to bar class members from claiming minimum or liquidated damages under statutes that require no proof for recovery. Courts repeatedly have held that even if sought in the class plaintiffs' complaint (which they were not in this case), such damages are incidental and do not render certification under Rule 23(b)(2) inappropriate where the class also seeks injunctive relief under the ADA.

*Id.* at 465-66 (citations omitted).

In the instant case, Plaintiffs have alleged claims for injunctive relief and/or declaratory relief, liquidated damages and actual damages in the proposed Third Amended Complaint. In line with *Association for Disabled Americans,* liquidated damages are properly seen as incidental. The parties do not include the release of actual damages as a part of their Settlement Agreement. Accordingly, in line with *Association for Disabled Americans,* monetary damages do not predominate.

Moreover, class certification under Rule 23(b)(2) for injunctive or declaratory relief is the most sensible and effective way of protecting broad interests like privacy and the proper treatment of Plaintiff Class members' information, especially when the circumstances in the Litigation demonstrate that out-of-pocket monetary losses would be difficult (if not impossible) to prove, and the Defendants have limited financial resources and could not possibly satisfy a judgment for statutory liquidated damages. The Settlement Agreement treats all Plaintiff Class members as a whole and provides that Defendants are to be

enjoined from knowingly obtaining, disclosing, or using Personal information from DHSMV motor vehicle records for purposes not permitted by the DPPA.[5]  Under these circumstances, a Rule 23(b)(2) settlement limited to injunctive and declaratory relief with nominal damages incidental thereto is undoubtedly the most reasonable and appropriate vehicle for certifying the settlement class proposed here.

### C.    The Settlement Satisfies the Requirements of Rule 23(e)

In addition to subsections (a) and (b) of Rule 23, settlement classes must satisfy Rule 23's general requirements for dismissal of class cases. Rule 23(e) provides that "a class action shall not be dismissed or compromised without the approval of the Court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Rule 23(e), *Fed.R.Civ.P.*  However, "[w]hen a class is certified pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, notice to the class members is not required." *Linquist v. Bowen*, 633 F. Supp. 846 (N.D. Ill. 1990)(citing *Gibson v. Local 40, Supercargoes & Checkers*, 543 F.2d 1259, 1263 n. 2 (9th Cir.1976); *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969), appealed on other grounds after remand, 488 F.2d 714 (5th Cir. 1974); A.R. Miller, "Problems of Giving Notice in Class Actions," 58 F.R.D. 313, 315 (1973)).  Rule 23 "expressly requires notice only in actions certified under Rule 23(b)(3); that is, where damages are being sought for the class. *See Fed.R.Civ.P.* 23(c)(2)(B).  Where, as here, a class is certified under Rule 23(b)(2), notice is discretionary and not as important. *Skinner v. Uphoff*, 2006 WL 925813 (C.A.10 (Wyo.)) *See Fed.R.Civ.P.* 23(c)(2)(A) ('For any class certified under Rule 23(b)(1) or (2), the court *may* direct appropriate notice to the class.') (Emphasis added); 7B Charles Alan Wright et *al., Federal Practice and Procedure* § 1793 (3d ed.

---

[5]  Settlement Agreement, ¶ 8.

2006)(stating that while Rule 23(b)(3) classes require mandatory notice, notice is not as important for Rule 23(b)(2) classes "because the class typically will be more cohesive.")

Unlike a Rule 23(b)(3) class, there is no right to request exclusion from Rule 23(b)(1) and (b)(2) classes. *Manual for Complex Litigation Fourth* §21.311 (2004). According to the Advisory Committee Notes to the 2003 Amendments to Rule 23:

> The authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised with care. For several reasons, there may be less need for notice than in a (b)(3) class action. There is no right to request exclusion [or what is commonly referred to as "to opt out"] from a (b)(1) or (b)(2) class. The characteristics of the class may reduce the need for formal notice. The cost of providing notice, moreover, could easily cripple actions that do not seek damages. The court may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice.

In the same vein, the most cited class action treatise, *Newberg on Class Actions*, provides:

> Some courts have adopted a more enlightened approach in applying Rule 23(e) [relating to dismissal of class actions] which avoids procedural posturing and relieves the parties of the expense of notice when it is inappropriate. Each request for dismissal or compromise is examined according to its own circumstances to determine whether it may violate the function of the rule. If neither loss of benefit to the class nor evidence of collusive agreement is present, notice is unnecessary. (footnote omitted)

4 *Newberg on Class Actions*, § 11.72 (4th ed.)

In line with *Newberg* and the Rule 23 Notes quoted *supra*, the court in *Green v. American Express Co.*, held that individual notice of settlement to the one million class members of a Rule 23(b)(2) class was unwarranted because "the cost of notice, to say nothing of the postage, would jeopardize, and likely destroy, the hard fought settlement agreement that the parties have presented." 200 F.R.D. 211, 213 (S.D.N.Y. 2001). Consistent with *Green*, the court in *Shelby v. Principal Mutual Life Insurance Co.*, approved a class settlement without notice because the settlement did not prejudice absent class members who effectively retained their

right to sue for damages they may have incurred because of the unlawful practice alleged in the suit. 2003 WL 22772330 (S.D.N.Y.) In making this determination, the *Shelby* court, like the court in *Green,* noted the simple act of identifying class members would have involved unjustified time and expense in light of the marginal likelihood of class monetary recovery. *Id.* at *3.

In this case, there are potentially 18,000,000 Class Members. Accordingly, locating potential Class Members to provide individual notice would be nearly impossible. The time and expense of such endeavor could hardly be justified or reasonable, especially in light of Defendants' lack of financial wherewithal. Additionally, as stated above, the Settlement Agreement does not prejudice Plaintiff Class members' rights to file independent actions for actual damages, if any could in some way be confirmed. Under the foregoing circumstances, only the limited notice provided for in the Settlement Agreement should be required.

## IV.    THE SETTLEMENT IS WITHIN THE RANGE OF REASONABLENESS

In deciding whether to approve a proposed settlement, the reviewing court must ultimately find that the proposed settlement is "fair, reasonable and adequate." *Borcea,* 238 F.R.D. at 672; *Lipuma v. American Express Co.,* 406 F.Supp.2d 1298, 1314. This Court in *Borcea* listed six factors courts examine determine whether to grant final approval to a class settlement "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." 238 F.R.D. at 672-673 (citing *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir.1984). "In addition, [this Court held] the judgment of experienced counsel is relevant to

approval." *Borcea* at 673 (citations omitted). Where a settlement results from "arm's length negotiations between experienced counsel after significant discovery ha[s] occurred, the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006) (citations omitted).

At the preliminary approval stage, though, not all of the foregoing factors are determinable—for example—the amount of opposition to the settlement is not determinable since the settlement has just been filed, and notice of the settlement, including notice to appropriate governmental authorities as required by 28 U.S.C. §§ 1711-1715, has not been provided. *See, In Re Amino Acid Lysine Antitrust Litigation*, 1996 WL 197671 (N.D. Ill.). Nor has the Court reviewed counsel's application for attorney's fees under the Settlement Agreement, which is presented at the final fairness hearing. At the preliminary approval stage, the court makes the original determination whether the proposed settlement is within the range of fairness, reasonableness and adequacy so as to justify approval of the settlement and certification of a settlement class, and in this process sets a final fairness hearing to decide whether the proposal is indeed fair, reasonable and adequate in the ultimate sense. *In Re Amino Acid Lysine Antitrust Litigation*; *Manual for Complex Litigation Fourth* §21.632 (2004).

Besides satisfying the procedural mandates of Rule 23, there are several reasons why the proposed Settlement Agreement is within the range of fairness, reasonableness, and adequacy, and this Court should grant it preliminary approval:

A.    **Courts Favor Settlements of Class Actions.**

In *Borcea,* 238 F.R.D. at 671, this Court found that "[t]here is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation." (*citing, Bennett* 737 F.2d at 986). Similarly, in *In re Sunbeam*

21

*Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001), the Court noted the "judicial favoritism shown toward the settlement of large and complex cases . . . has special importance in class actions with their notable uncertainty, difficulties in proof, and length." (*citing, Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988)).

> **B.    Settlements Are a Result of Compromise.**

"In evaluating a settlement's fairness, 'it should [not] be forgotten that compromise is the essence of a settlement. The trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might [be] gained.'" *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 (quoting *Cotton*, 559 F.2d at 1330); *Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422, at *4 (S.D. Fla. May 7, 2002) (same); *see also Bennett*, 737 F.2d at 986 ("In addition, our judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."). "Determining the fairness of the settlement is left to the sound discretion of the trial court and [the appellate court] will not overturn the court's decision absent a clear showing of abuse of that discretion." *Bennett*, 737 F.2d at 986.

In the settlement process, too, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties. Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton*, 559 F.2d at 1330 (citation omitted); *see Lipuma*, 406 F. Supp. 2d at 1315 (same); *Ass'n for Disabled Ams.*, 211 F.R.D. at 467 (same).

### C.    Recovery Under the Circumstances is Significant.

This Litigation involved potentially 18,000,000 class members, whose privacy interests and rights under the DPPA were at stake. The DPPA prohibits any person from knowingly obtaining, disclosing, or using "personal information" and/or "highly restricted personal information" contained in an individual's motor vehicle record" for marketing or other purposes not permitted by the DPPA without the individual's prior express consent. The Settlement Agreement provides the Plaintiff Class an assurance regarding the status of their personal, private information without the expense, uncertainty, and substantial delay of future litigation. As the court aptly stated in *In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993):

> The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.

*Id.* at 560. *See, In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive").

The Settlement Agreement effectively provides Plaintiff Class members with equitable and monetary relief with absolutely no cost to them. Defendants have agreed to pay Plaintiffs' attorneys' fees, an incentive award to the named Plaintiffs for the time and effort they have expended, and all costs of notice and settlement administration.[6]

---

[6] Settlement Agreement, ¶¶ 8-10.

Of equal importance to the injunctive and incidental monetary relief under the Settlement Agreement, every Plaintiff Class member (except named Plaintiffs) retains the right to pursue an individual action for actual damages, if any, for any DPPA violation Plaintiffs alleged in their Class Action Complaint. The parties' Settlement Agreement does not release Plaintiff Class members' claims for actual damages under the DPPA, and as such it has no *res judicata* effect on them with respect to such actual damage claims, should they be able to prove them up.

Clearly, the proposed Settlement Agreement is the most realistic and the best outcome as could be expected in the circumstances of the Litigation set forth above and is well "within the range of fairness" to warrant the Court's preliminary approval.

## V.    CONCLUSION.

Based on the foregoing, Plaintiffs respectfully request that this Court issue an order certifying for settlement purposes the Plaintiff Class described above, granting preliminary approval of the Settlement Agreement, appointing Plaintiffs as the class representatives and their counsel as Class Counsel, setting a date and time for a final fairness hearing, and granting any other appropriate relief the Court deems proper.

Respectfully submitted,

BY:_____ /s/ David D. Welch _____
**DAVID D. WELCH**
Florida Bar No. 109537
**DAVID D. WELCH LAW OFFICES**
2401 E. Atlantic Boulevard, Suite 400
Pompano Beach, FL 33062
Tele: 954-943-2020 / Fax:  954-782-1552

**TOD ARONOVITZ**
Florida Bar No. 186430
**STEVEN JAFFE**
Florida Bar No. 390770
**ARONOVITZ JAFFE**
Suite 2700 – Museum Tower
150 W. Flagler Street
Miami, Florida 33130
Tele: 305-372-2772 / Fax: 305-397-1886

**PETER A. PORTLEY**
Florida Bar No. 112563
**PORTLEY AND SULLIVAN P.A.**
2211 E. Sample Road
Lighthouse Point, FL 33064
Tele: 954-781-7600 / Fax: 954-941-3469

**LAWRENCE D. GOODMAN**
Florida Bar No. 712647
**JOHN W. DEVINE**
Florida Bar No. 708607
**DEVINE GOODMAN PALLOT RASCO & WELLS, P.A.**
777 Brickell Avenue, Suite 850
Miami, Florida 33131
305-374-8200 Telephone
305-374-8208 Facsimile

**JOEL S. PERWIN**
Florida Bar No. 316814
**JOEL S. PERWIN, P.A.**
Alfred I. DuPont Bldg. Suite 1422
169 E. Flagler Street
Miami, Florida 33131
Tele: 305-779-6090 / Fax: 305-779-6095

**Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _Oct. 20_, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel on the attached service list, via transmission of Notices of Electronic Filing generated by CM/ECF.

BY:    /s/ David D. Welch
**DAVID D. WELCH, ESQ.**
Florida Bar No. 109537

<u>**SERVICE LIST**</u>

**ATTORNEYS FOR PLAINTIFFS:**

**TOD ARONOVITZ**
Florida Bar No. 186430
**ARONOVITZ JAFFE**
Suite 2700 - Museum Tower
150 W. Flagler Street
Miami, Florida 33130
Tele: 305-372-2772 / Fax: 305-397-1886

**LAWRENCE D. GOODMAN**
Florida Bar No. 712647
**DEVINE GOODMAN PALLOT RASCO &
WELLS P.A.**
777 Brickell Avenue, Suite 850
Miami, Florida 33131
Tele: 305-374-8200 / Fax: 305-374-8208

**PETER A. PORTLEY**
Florida Bar No. 112563
**PORTLEY AND SULLIVAN, P.A.**
2211 E. Sample Road
Lighthouse Point, FL 33064
Tele: 954-781-7600 / Fax: 954-941-3469

**JOEL S. PERWIN**
Florida Bar No. 316814
**JOEL S. PERWIN, P.A.**
Alfred I. DuPont Bldg. Suite 1422
169 E. Flagler Street
Tele: 305-779-6090 / Fax: 305-779-6095

**ATTORNEYS FOR DEFENDANTS:**

**HELEN ANN HAUSER**
Florida Bar No. 353906
**ANNA VOLKOVA**
Florida Bar No. 392073
**RESTANI, DITTMAR & HAUSER, P.A.**
201 Alhambra Circle
Suite 1050
Coral Gables, Florida 33134
Tele: 305-445-4090 / Fax: 305-445-7728
**Attorney for Defendant Fred O. Dickinson III**

**LAWRENCE D. SMITH**
Florida Bar No. 323594
**WALTON LANTAFF SCHROEDER &CARSON**
9350 S. Dixie Highway - 10th Floor
Miami, Florida 33156
Tele: 305-671-1300 / Fax: 305-670-7065
**Attorney for Defendant Sandra Lambert**

**ELIZABETH M. RODRIQUEZ**
Florida Bar No. 821690
**FORD & HARRISON LLP**
Bank of America Tower - Suite 2120
100 S.E. 2nd Street
Miami, Florida 33131
**Attorney for Defendant Carl A. Ford**